# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

NICHOLAS ALAHVERDIAN,

   Plaintiff,     :   Case No. 3:13-cv-00132

                 District Judge Thomas Rose

  -vs-            Magistrate Judge Michael R. Merz

              :

MARY J. GREBINSKI, et al.,

   Defendants.

---

# REPORT AND RECOMMENDATIONS ON DEFENDANTS' MOTION TO DISMISS

---

   This case is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim under 12(b)(6), or in the alternative, if adjudication of this motion requires the Court to consider matters outside of the pleading then Defendants move for summary judgment under Rule 12(d) and Rule 56 (Doc. No. 23). Plaintiff filed a Memorandum in Opposition to the Motion to Dismiss (Doc. No. 27) and Defendants filed a Reply (Doc. No. 28). As for the Motion for Sanctions, Plaintiff filed a response on February 28, 2014 (Doc. No. 26), and Defendants a Reply on March 6, 2014 (Doc. No. 29).

   Motions to dismiss involuntarily are classified as dispositive under 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72, requiring a recommended disposition from a Magistrate Judge to whom they are referred.

   A federal court exercising diversity subject matter jurisdiction over state law claims must apply state substantive law to those claims. 28 U.S.C. § 1652; *Erie Railroad Co. v. Tompkins*,

304 U.S. 64 (1938). In applying state law, the Sixth Circuit follows the law of the State as announced by that State's supreme court. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008); *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992); *Miles v. Kohli & Kaliher Assocs.,* 917 F.2d 235, 241 (6th Cir. 1990). "Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." *Miles,* 917 F.2d at 241; *In re Akron-Cleveland Auto Rental, Inc.,* 921 F.2d 659, 662 (6th Cir. 1990); *Bailey v. V & O Press Co.*, 770 F.2d 601 (6th Cir. 1985); *Angelotta v. American Broadcasting Corp.,* 820 F.2d 806 (1987). The available sources to be considered if the highest court has not spoken include relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries, and the "majority rule" among other States. *Bailey*, 770 F.2d at 604. "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989); *accord Northland Ins. Co. v. Guardsman Products, Inc.*, 141 F.3d 612, 617 (6th Cir. 1998); *Melson v. Prime Ins. Syndicate, Inc.*, 429 F.3d 633, 636 (6th Cir. 2005). This rule applies regardless of whether the appellate court decision is published or unpublished. *See Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 328 (6th Cir. 2000); *Puckett,* 889 F.2d at 1485; *Ziegler v. IBP Hog Market*, 249 F.3d 509, 517 (6th Cir. 2001).

Respondent's Motion is made under Fed. R. Civ. P. 12(b)(6). "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1356 at 294 (1990); *see also Gex v. Toys "R"*

*Us*, 2007 U.S. Dist. LEXIS 73495, *3-5 (S.D. Ohio, Oct. 2, 2007); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), *citing Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Stated differently, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is designed to test, whether as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer*, 988 F.2d at 638, *citing Nishiyama*, 814 F.2d at 279.

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has recently been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level,  see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627, 161 L. Ed. 2d 577; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F. Supp. 2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558 (*overruling Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), specifically disapproving of the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was announced. Following *Iqbal*, district courts faced with motions to dismiss must first accept as true all of the factual allegations contained in a complaint. This requirement "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. at 556. Under *Iqbal*, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. . . . Exactly how implausible is "implausible" remains to be seen, as a malleable standard will have to be worked out in practice." *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629-30 (6th Cir. 2009). Applying the *Twombly/Iqbal* standard, Judge Rice has written:

> [O]n the plausibility issue, the factual allegations in the complaint need to be sufficient "to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949-50). Further, "a legal conclusion [may not be] couched as a factual allegation" and mere "recitations of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Id*. (quoting *Hensley v. Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

*White v. Chase Bank USA, NA*, 2010 U.S. Dist. LEXIS 102908 (S.D. Ohio 2010), as cited in *General Truck Drivers, Warehousemen, Helpers Sales & Serv., & Casino Emples., Teamsters Local Union No. 957 v. Heidelberg Distrib. Co.*, 2012 U.S. Dist. LEXIS 68996 at *6 (S.D. Ohio 2012); *B&P Company, Inc. v. TLK Fusion Entertainment, LLC*, 2013 U.S. Dist. LEXIS 26131 at *6 (S.D. Ohio 2013).

The Sixth Circuit has also recently held that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Savoie v. Martin*, 673 F.3d 488, 492 (6th Cir. 2012), *quoting Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dept. of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010), *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and that "[a]ll well-pled facts in the complaint must be accepted as true." *Savoie*, *supra*, *citing Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009), *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).


**Facts of the Case**

This case arises from an encounter between Nicholas Alahverdian, formerly known as Nicholas Rossi,[1] and Mary Grebinski.

At the 2008 criminal trial, Ms. Grebinski testified that Alahverdian had sexually assaulted her between classes in a stairwell at Sinclair Community College. Alahverdian attempted to establish that the interaction had been consensual. At the conclusion of the trial he was found guilty of one count of Sexual Imposition, in violation of Ohio Revised Code § 2907.06(A), and one count of Public Indecency, in violation of Ohio Revised Code § 2907.09(A)(1). *See Ohio v. Rossi*, 2009-Ohio-1963 (Ohio App. 2nd Dist. 2009).

---

[1] Plaintiff's adoptive name and the name he used at the time until resuming his birth name of Alahverdian sometime in 2010. *See Alahverdian v. Ohio*, 2013 U.S. Dist. LEXIS 66962 at * 4, fn. 1, citing Complaint, Doc. No. 7, n.1, PageID 198.

Alahverdian appealed the decision of the Dayton Municipal Court. Additionally he filed a motion for new trial based on newly discovered evidence. This evidence took the form of a Myspace blog posting allegedly written by the victim, Grebinski, in which she admitted to having lied under oath in an attempt to deflect accusations of cheating and protect her relationship with her boyfriend. The court overruled the Motion for New Trial, finding that it lacked jurisdiction to rule on the motion while Alahverdian's appeal was pending. *See State v. Rossi*, 2010-Ohio-4534 (Ohio App. 2nd Dist. 2010). Once his appeal was decided Alahverdian filed a "Motion to Have the Court Vacate its Prior Decision Overruling Defendant's Motion for a New Trial and to Continue Stay of Execution." *Id*. The trial court denied this motion on the basis that it did in fact have jurisdiction to rule on the original motion for new trial while the appeal was pending. Alahverdian appealed and the Ohio Second District Court of Appeals found that the trial court erred in failing to consider his original motion for new trial and remanded the matter. *Id.*

On February 28, 2011, the trial court held an evidentiary hearing on the motion for new trial. Again, the crux of Alahverdian's claim was new evidence that Ms. Grebinski posted a blog on her Myspace account in which it was alleged she had recanted her trial testimony against Alahverdian.

The State countered by presenting expert testimony from Detective Doug Roderick, an expert in computer forensics. Det. Roderick was employed by the Dayton Police Department and was "on loan" to the Federal Bureau of Investigations (FBI) as a forensic examiner of computer digital evidence. *State v. Rossi*, 2012-Ohio-2545 at ¶ 29 (Ohio App. 2nd Dist. 2012). When asked to determine whether the blog post was authentic, the detective testified with ninety percent certainty that the blog post had been altered or was completely fabricated. He stated that:

> anyone familiar with the "cut," "copy," and "paste" functions of a
> computer with access to basic computer programs would have the
> capability to easily alter or fabricate a document such as Defense
> Ex. A-1 in order to make it appear as if a blog post was authored
> by another individual or alter the text of an existing blog post to
> suit one's purposes and then print it.

*Id*. at ¶ *19*.  He also noted a discrepancy between the date of the posting and corresponding day

of the week, a mistake that would not have been made by a computer, but rather only by human

error. *Id*. at ¶ 30.  After concluding the hearing, the trial court denied the Motion for New Trial

as the newly discovered evidence was "highly questionable, *** not credible and true, and [did]

not carry enough weight to create a strong possibility of a different result if a new trial was

granted." *Id*. at ¶ 21. The court of appeals affirmed. *Id*. at ¶ 42.

Alahverdian's Amended Complaint pleads three claims for relief: defamation per se,

false light invasion of privacy, and intentional infliction of emotional distress. The claims

allegedly arise from comments made by Defendants Mary Grebinski and Nathan Lanning on

various social media sites and which pertain to Mr. Alahverdian and/or the past criminal case.

In his prayer for relief, he asks that this Court:  1) make a finding that Defendant

Grebinski committed perjury in Alahverdian's state court trial on March 31, 2008; 2) require that

a) Defendants publish a full retraction; and b) remove all traces of defamatory article; 3) Restrain

and enjoin Defendants from contracting or communicating with Plaintiff on any medium; 4)

awarding damages for detraction from Plaintiff's good name and reputation, for mental anguish,

distress and humiliation in an amount to be proven at trial, and prejudgment interest and costs; 5)

assess costs and fees incurred in the prosecution of this action; and 6) grant such other and

further relief as this Court may deem just and proper. (Amended Complaint, Doc. No. 21,

PageID 378-379.)

In response, Defendants move to dismiss the Amended Complaint for failure to state a claim for which relief can be granted and for attorney sanctions.

## Analysis

### Count I- Defamation per se

In his first claim, Alahverdian alleges defamation resulting from Defendants' contributions to the editing and publishing of statements on their websites which served to both place him in a false light as well as to threaten and harass him. (Amended Complaint, Doc. No. 21, PageID 374.)  Specifically he alleges that the comments made contained opinions and behaviors not held or perpetrated by himself, such as fugitive behavior, sexual assault, and questioned his mental state. *Id*.  Additionally, Alahverdian argues that these statements were made "willfully, recklessly, and with malice and forethought." *Id*.

Defendants allege in their Motion to Dismiss that Alahverdian's claim for defamation cannot be sustained by the evidence, as the statements were based upon truth and/or not defamatory in nature. (Motion to Dismiss, Doc. No. 23, PageID 387, 389-393.)

Under Ohio law, the elements of a defamation claim, whether libel or slander, are "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th  Cir. 2008)*, quoting Akron-Canton Waste Oil v. Safety-Kleen Oil Servs*., 81 Ohio App. 3d 591, 601   (Ohio App. 9th Dist. 1992) (internal quotation marks omitted).

To determine if a statement is defamatory it must first be a statement of fact and not of opinion. This is a question of law and the court should apply a totality of the circumstances test, considering the specific language used, whether the statement was verifiable, the general context of the statement, and the broader context in which the statement appears. *Curry v. Village of Blanchester*, 2010-Ohio-3368, ¶47 (Ohio App. 12th Dist. 2010). Further, the "words must be of such a nature that courts can presume as a matter of law that they tend to degrade or disgrace the person of whom they are written or spoken, or hold him up to public hatred, contempt or scorn." *Moore v. P.W. Publishing*, 3 Ohio St. 2d 183, 188 (1965). Defamation *per se* occurs when a statement is defamatory on its face. *Helfrich v. Allstate Ins. Co.*, 2013-Ohio-4335, at ¶27 (Ohio App. 10th Dist. 2013), *citing Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs.*, Inc., 81 Ohio App.3d 591, 601, *citing* Restatement of the Law 2d, Torts, Section 558, at 155 (1977). "In order for a statement to constitute defamation per se, it must 'consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, impute *** some loathsome or contagious disease which excludes one from society or tend *** to injure one in his trade or occupation.'" *McWreath v. Cortland Bank*, 2012-Ohio-3013, ¶43 (Ohio App. 11th Dist. 2012), *quoting Heidel v. Amburgy*, 2003-Ohio-3073, ¶30 (Ohio App. 12th Dist. 2003), *citing McCartney v. Oblates of St. Francis de Sales*, 80 Ohio App. 3d 345, 353 (1992); *Whiteside v. Williams*, 2007-Ohio-1100, ¶4-5 (Ohio App. 12th Dist. 2007). Defamation *per quod*, on the other hand, occurs where a statement is defamatory through interpretation or innuendo. *Helfrich*, 2013-Ohio-4335, at ¶27.

The Court turns to each statement underlying this claim, and in turn the arguments made by the parties, accepting as true all the factual allegations set forth in the Amended Complaint. Defendants first address the portion of Alahverdian's claim against Grebinski. The basis for this

claim are two comments purported to have been posted by her on WHIO's Facebook page or website.[2] The statements were posted in the comment section of a news story reporting on Alahverdian's press conference discussing his civil lawsuit filed against the judge and others involved in his criminal case. (Motion to Dismiss, Doc. No. 23, PageID 387.) Grebinski's alleged comments were made in response to comments posted by someone named Colleen, in which Ms. Grebinski said, "last time i checked, colleen, you never were and never have been a part of this case. dont go around knocking on the victim when you have NEVER met her. k thx." *Id*., citing Doc. 21 at ¶ 28. The second comment, again directed at Colleen, was "yes. as a military police warrior in the us army i have nothing better to do. yes. your very right." *Id*. at PageID 388, citing Doc. 21 at ¶ 29. Defendants argue that as a matter of law, these comments do not support a defamation claim as the assertions made were true. *Id*. at PageID 387- 389.

This Court concurs. Even taking the allegations in the Complaint as true, these do not raise a claim of entitlement to relief for defamation. The comments neither say nor imply any information about Alahverdian. In looking at the general context as well as the broader context, the statements were made in a comment section to a news article regarding Alahverdian's civil lawsuit arising out of the criminal action against him. Furthermore, they were made in response to another's comments surrounding Mr. Alahverdian's case and disparaging the victim Ms. Grebinski. They did not contain any allegation, statement, or commentary as to Alahverdian, but rather, the sentiment evoked is nothing more than defensive, and possibly angry, feelings on the part of the victim as a result of the comments made by Colleen. As for the truth or falsity of the statements someone named Colleen has never been a party to this case nor a party or witness in the state criminal case or the prior case in this Court. The Court declines to speculate as to

<hr>

[2] At some portions of the Complaint and Motion to Dismiss the WHIO site is stated as a website, at others it is specified as being their Facebook page.

whether or not Colleen and Grebinski knew each other but finds no possible way that assertion could be at issue. As such, the above comments do not meet the criteria for being false and defamatory.

Next Defendants address the portion of the defamation claim relating to the alleged comments made by Lanning on his personal blog. The comments are as follows:

> Justice? Lets have a little talk about justice. How the f--- someone who was already proven by an FBI investigator to have made up a false website to lie and make another person whom they sexual assaulted look like they are perjuring themselves in court . . . . Can hop states several times, change their name, and dodge having to register as an offender for years . . . is beyond me. Justice WAS done . . .this guy is a f---ing crazy f---. But . . . regardless of what this person thinks. . . I say this directly to them. You stay the f--- away from me and my family, and let us be. You can hide all you want behind law suits, etc. But when this life ends . . .you will reach judgement before the lord almighty . . .And No one can lie to God. No law suit, no loop hole, no anything will protect you on judgement day. You should have never brought me in to this and you'll do well not to attempt to again. this written text uploaded is neither about, or directed to any particular person, group, or individual.

(Motion to Dismiss, Doc. No. 23, PageID 389-390, *citing* Doc. No. 21 at ¶21; expletives deleted.)  Again, assuming the truth of the statements, regardless of the sentence providing a disclaimer, Defendants argue that the truth behind the statements defends against any claim of defamation. *Id*. at 390.  For example, the website cited by Alahverdian in his criminal case as evidence of his allegation that Grebinski had recanted her testimony *was* proven to be "made up" and "false." *Id*. The expert who discredited the authenticity of Grebinski's posting on the website *was* associated with the FBI. *Id*. Defendants also argue that because the state court determined these facts surrounding these issues, Alahverdian is now barred by collateral estoppel from raising them here. *Id*.

The Court again agrees with this assessment. The state court made the following findings of fact in its opinion on the evidentiary hearing concerning the new evidence:

[*P18] At the hearing on Rossi's motion for new trial, the State presented the testimony of Detective Doug Roderick, an expert in computer forensics. Det. Roderick testified that someone either altered or completely fabricated the Myspace blog post before Rossi submitted the "new" evidence to the trial court. Det. Roderick based his testimony on the fact that the date on the blog post on Defense Exhibit A-1 stated "May 16, 2008, Monday." Det. Roderick testified that this was an incorrect match of the date and the day of the week. In fact, the trial court took judicial notice that May 16, 2008, was actually a Friday. Det. Roderick testified that a computer system would never match a date with the incorrect day of the week. Thus, Det. Roderick concluded with ninety-percent certainty that Defense Ex. A-1 was either altered or that it was completely fabricated and not a genuine Myspace blog post at all.

[*P19] Det. Roderick also testified that anyone familiar with the "cut," "copy," and "paste" functions of a computer with access to basic computer programs would have the capability to easily alter or fabricate a document such as Defense Ex. A-1 in order to make it appear as if a blog post was authored by another individual or alter the text of an existing blog post to suit one's purposes and then print it. Rossi testified that he knew how to "cut," "copy," and "paste" from web pages, describing the process as "simple." Rossi also testified that he did not witness M.G. author the blog post, nor had she ever admitted to him that she did so. In fact, M.G. testified unequivocally that she did not author the blog post. Moreover, M.G. testified that she had never seen Defense Ex. A-1 until after Rossi's criminal trial when he filed a civil suit against her using the blog post as an exhibit in that case.

[*P20] We also note that Rossi testified that he never made any effort to trace the blog post through Myspace in order to discover where the post originated. Rossi testified that he did not trace the blog post even though he was aware that such action could be performed. Rossi gave no reason for his failure to request that the origin of the blog post be traced.

[*P21] In light of the evidence adduced at the hearing, the trial court found that Defense Ex. A-1 was "highly questionable, *** not credible and true, and [did] not carry enough weight to create a strong probability of a different result" if a new trial was granted.

Upon review, we cannot find that that the trial court abused its discretion when it rejected Rossi's Exhibit A-1 and his testimony as a basis upon which to grant his motion for a new trial. Accordingly, the trial court did not err when it overruled Rossi's motion for a new trial.

\*\*\*

[**\*P29**] Det. Roderick was called by the State to testify as an expert witness in the field of computer forensics at the hearing regarding Rossi's motion for a new trial. Det. Roderick testified that he is a detective employed by the Dayton Police Department. At the time of the hearing, Det. Roderick testified that he was on loan to the Federal Bureau of Investigations (FBI) as a forensic examiner of computer digital evidence. Det. Roderick further testified that he had been working as a computer forensic specialist since 2001. Det. Roderick also testified that he was certified as a forensic computer examiner by the International Association of Computer Investigator Specialists and the International Society of Forensic Computer Examiners. Det. Roderick testified that he received forensic computer training from the FBI and National White Collar Crime Center. Accordingly, the trial court did not err by allowing Det. Roderick to testify as an expert in forensic computer investigations.

*State v. Rossi*, 2012-Ohio-2545 (Ohio App. 2nd Dist. 2012).

Collateral estoppel precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action. *Taylor v. Sturgell,* 553 U.S. 880 (2008); *Stern v. Mascio*, 262 F.3d 600, 608 (6th Cir. 2001), *quoting Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 918 F.2d 658, 660-61 (6th Cir. 1990). The issue preclusion doctrine applies only if "(1) the precise issue raised in the present case [was] raised and actually litigated in the prior proceeding; (2) determination of the issue [was] necessary to the outcome of the prior proceeding; (3) the prior proceeding . . . resulted in a final judgment on the merits; and (4) the party against whom [issue preclusion] is sought . . . had a full and fair opportunity to litigate the

issue in the prior proceedings." *Stern,* 262 F.3d at 608, *quoting Smith v. Securities & Exch. Comm'n,* 129 F.3d 356, 362 (6th Cir. 1997)(en banc).

Here the trial court determined whether or not Det. Roderick was an expert witness for purposes of his testimony. As part of that inquiry, the court considered the Detective's relevant career history in forensic computer investigation, which included both training and being "on loan" to the Federal Bureau of Investigations, albeit an official detective with the Dayton Police Department. Given this background it was determined that Det. Roderick was an expert. Additionally the court decided upon and found credible his testimony that the website had been fabricated or altered. As such, there was a legal determination on both these matters in the state courts. As such, we are barred by collateral estoppel from adjudicating on the same claims, to wit, the veracity of the underlying grounds to the defamation claim as it pertains to Det. Roderick's association with the FBI, as well as the alleged Myspace post recanting trial testimony. The court of appeals determined both the assertions that Det. Roderick was working with the FBI and that the blog posting had be altered or fabricated to be true. As such, the statements relating to these topics as alleged to have been made by Lanning could not support a plausible claim of defamation.

As for the asserted defamation arising from Lanning's statements that Alahverdian had changed his name and moved from state to state several times, Defendants again rely on the truthfulness of the statements to establish that the claim should not proceed. (Motion to Dismiss, Doc. No. 23, PageID 390-391.) The filings show that Alahverdian, formerly known as Rossi, represents that he has lived in Massachusetts, Ohio, and Rhode Island. *Id.* As such the above statements were true and neither offensive, extreme, or outrageous. *Id.* at 391.

Again, this Court agrees. Mr. Alahverdian did in fact change his name from Nicholas Rossi to Nicholas Alahverdian. He also claims to be a citizen of the Commonwealth of Massachusetts, currently residing in Dayton, Ohio, as "the court and/or its probation department will not allow him to return to Massachusetts or Rhode Island to remain permanently." (Amended Complaint, Doc. No. 21, PageID 365, ¶ 4.) The Court does not know the intent behind the name change or various states of residence, however even combining Lanning's final comment, that Alahverdian was trying to "dodge registering as an offender," given the truth of the portion relating to name change and changes in residence, the comment as a whole does not degrade or disgrace or hold Alahverdian up to public hatred, contempt or scorn.

As for the other statements, Defendants assert that Lanning was offering his opinion that Alahverdian is a "f---ing crazy f---," and as such, cannot support a finding of defamation. (Motion to Dismiss, Doc. No. 23, PageID 391.) The statement itself covers a broad range of possible meanings. Defendants point to Plaintiff's own claim that he has suffered mental distress as a result of these events, in which case the statement could be taken as true. *Id*. Taken more figuratively however, Defendants' assert that the mere inclusion of the "f-word" does not make the expression of opinion either extreme or outrageous. *Id*.; *see Cohen v. California*, 403 U.S. 15 (1971).

In relation to this statement, Plaintiff himself states:

> People frequently use adjectives such as "stupid" and "crazy" to express their feelings or opinion about an individual. No reasonable listener would interpret such expressions as factual assertions about the individual's mental capacity. See, e.g., *Stepian v. Franklin* (1988), 39 Ohio App.3d 47 (Radio talk show host's description of sports figure using terms such as stupid, scum, pathological liar, crazy, and suicidal were all considered expressions of opinion, not statements of fact).

(Response to Motion to Dismiss, Doc. No. 27, PageID 414-415.) He follow this by stating however that "there is no indication that Lanning was expressing an opinion" as Lanning failed to preface his statement with "in my opinion" or "I believe." *Id*. at PageID 415. He further states the "internet is seen as a provider of factual information for the world. No one would post anything on the internet that they did not feel was wholly true and accurate." *Id*. Therefore, it necessarily follows that without that preface stating this is an opinion, readers would assume Lanning's statement to be true. *Id*. This argument is not persuasive and the contention that everything posted on the internet is to be believed to be fact, absent a preface stating it is opinion, is naïve or disingenuous on the part of Plaintiff. The Court finds that a reasonable person would take this to be an expression of opinion, albeit a colorful colloquialism to express such opinion, but an opinion nonetheless. Understanding this to be an opinion, it would not be of a nature to degrade, disgrace, create public hatred, contempt, or scorn and cannot support a plausible claim for defamation.

Next Defendants argue that the contention around the statement that Alahverdian "brought" Lanning "in to this" is not an inaccurate statement. (Motion to Dismiss, Doc. No. 23, PageID 392.) Alahverdian himself admitted that he linked an address for his website relating the sexual encounter and resulting court case with Lanning's blog, thus bringing him into it. *Id., citing* Doc. No. 21 at ¶20. As such, this particular statement does not provide grounds for a claim of defamation. *Id*.

Again, the Court agrees. The Complaint does in fact relate that Mr. Alahverdian took action to link to a blog posted by Lanning. *See* Amended Complaint, Doc. No. 21, ¶¶20-21. Thus, his actions, at least in this particular instance, did serve to involve Lanning. Even if this were not the case however, the comment, "[y]ou should have never brought me in to this and

16

you'll do well not to attempt to again. . ." does not serve to degrade or disgrace Mr. Alahverdian and would not be a plausible basis for a defamation claim.

Two other statements alleged to have been made by Lanning are also at issue. The first, posted on Lanning's Facebook page, relates the utterance, "I'm sorry if I offend anyone . . .but some people, just don't belong in this world. . ." *Id.*, *citing* Doc. No. 21 at ¶24. Defendants again argue that this is a matter of opinion and not defamatory. To the contrary, this is a commonly-heard expression. *Id.* The final statement "consisted of language copied verbatim from a previous comment posted by someone else in support of Alahverdian…," "there's this thing called crying wolf, people. The person that started all this is the one with the serious issues. Nicholas is innocent and deserves to have a normal life. One in which, thanks to government and child services has never gotten the opportunity to have." *Id.*, *citing* Doc. No. 21 at ¶27.

Like the "crazy" comment, this Court finds that the language used by Lanning, again not conveying the most pleasant of sentiments, is merely being used to convey an opinion. It is not a statement of fact or a threat. It is simply a phrase used to express an opinion of displeasure or anger against another. Finally, accepting the facts contained within the Complaint as true, the Court is at a loss as to how the final statement attributed to Mr. Lanning is defamatory or when he "changed sides" on the matter. Paragraph 27 of the Amended Complaint attributes the statement that "Nicholas is innocent and deserves to have a normal life…." to Lanning. (Amended Complaint, Doc. No. 21, PageID 370.) The Court is assuming that this statement was in fact cut and pasted from a previous comment made by a supporter of Alahverdian. Even were that not that case and Mr. Lanning did in fact write it, this comment is not defamatory as it does not degrade or disgrace Alahverdian in any manner.

In his Response to the Motion to Dismiss, Alahverdian reiterates the claim of defamation as a result of Lanning's statement that Plaintiff sexually assaulted another. (Doc. No. 27, PageID 414, 417-418); See also Amended Complaint, Doc. No. 21, PageID 373. He specifically argues that he was convicted of public indecency and sexual imposition and characterizing the crimes as assault implies "more sinister activity." *Id*. at 417-418.

Defendants again contend that there is truth to this statement. (Reply to Response to Motion to Dismiss, Doc. No. 28, PageID 422-424.) As support for this position, Defendants offer the court of appeals opinion which in fact referred to the incident as a sexual assault. *Id*. at PageID 423, *citing State v. Rossi*, 2012-Ohio-2545, ¶9 ("Rossi asserts that the blog post was newly discovered exculpatory evidence which established that M.G. fabricated her testimony at trial regarding the sexual assault.") Further, the Ohio Revised Code groups sexual imposition and public indecency under the editorial heading "Sexual Assault." (Reply to Response to Motion to Dismiss, Doc. No. 28, PageID 422-424.) Even if not the proper technical term, the "gist" of the overall statement is still substantially true and as such it is not actionable. *Id*. at PageID 423, *citing Nat'l Medic v. E.W. Scripps Co.*, 61 Ohio App.3d 752, 755 (Ohio App. 1st Dist. 1989)(stating, "it is sufficient [in defending against a defamation action] to show that the imputation is substantially true, or as it is often put, to justify the 'gist,' the 'sting,' or the substantial truth of the defamation.") Defendants argue that the term "sexual assault" carries the same "sting" as characterizations that "may be more to Alahverdian's liking, such as 'sex crime' or 'sex offense. . . " *Id*. at PageID 423-424.

A statement implying criminal behavior or moral turpitude can be defamatory. The Court recognizes that "Plaintiff asserts that he is not guilty of any crime." (Response to Motion to Dismiss, Doc. No. 27, PageID 417.) The state courts of Ohio disagree on that point however,

finding him both guilty of sexual imposition under Ohio Revised Code § 2907.06 and public indecency in violation of Ohio Revised Code § 2907.09. *See State v. Rossi*, 2009-Ohio-1963 (Ohio App. 2nd Dist. 2009). These crimes are categorized in both Page's and Baldwin's Ohio Revised Code under "sex offenses," and further divided into the sub-category of "Sexual Assaults." *See* Ohio Revised Code 2907. While the Court recognizes that rape is more extreme than sexual imposition, in that sexual imposition requires only sexual contact, reliable sources of the Ohio Revised Code is not divided as such. *See also State v. Davis*, 1983 Ohio App. LEXIS 13303, at *9-11 (Ohio App. 2nd Dist. 1983) (considering the purpose behind a statute in Montana to help decipher the meaning of their sexual contact statute, "the policy behind a sexual assault statute is to criminalize and punish sexual or intimate impositions that do not involve penetration, but which express a societal concern for such imposition because they provoke outrage, disgust, or shame in the victim," and stating "we also believe that was the intent of the Ohio legislature in enacting R.C. 2907.01(B).") Further, multiple cases decided by the Ohio courts use the term sexual assault in describing why a defendant was guilty of a particular offense. *See State v. Carlisle*, 131 Ohio St. 3d 127 ("guilty of kidnapping and gross sexual imposition ("GSI") in connection with the sexual assault of his 6-year-old foster daughter); *City of Wilmington v. Cook*, 1998 Ohio App. LEXIS 4552 (Ohio App. 12th Dist. 1998)(holding in a public indecency case that hearsay could be admitted under "excited utterance" exception when applied to young children who are the victims of sexual assault); *State v. Dalton*, 2004-Ohio-3575, ¶2 (Ohio App. 2nd Dist. 2004)("the female was subjected to a series of sexual assaults, including forced cunnilingus, digital penetration, and groping.") Lanning's statement describing the events as a sexual assault is at minimum substantially true and not defamatory.

It is therefore respectfully recommended that count one be dismissed in its entirety for failure to state a plausible claim of defamation on which relief may be granted.

Count II-False Light Invasion of Privacy

In Alahverdian's second count he alleges false light invasion of privacy in that Defendants contributed to the editing, creating, writing, and publication of false and defamatory statements on their websites. (Amended Complaint, Doc. No. 21, PageID 375-377.) Once posted, the comments became easily accessible on the internet. These statements contained allegations, accusations, and statements of opinions and beliefs not held by Petitioner, thus placing him in a false light. *Id*. at PageID 376. Such false light is highly offensive to a reasonable person and the statements adversely affect Alahverdian's professional and personal reputation as well as his credibility. *Id*. As a proximate result of the publication of these statements, Plaintiff alleges he has suffered substantial damages, including but not limited to, loss of professional and personal reputation, emotional distress, embarrassment, and personal humiliation. *Id*. at PageID 377.

Like the previous count alleging defamation, Defendants again argue that the truthfulness of the statements made by Grebinski and Lanning bar a claim for false-light invasion. (Motion to Dismiss, Doc. No. 23, PageID 388-393); (Reply to Response to Motion to Dismiss, Doc. No. 28, PageID 422.) Moreover, they argue that the comments, despite their truthfulness, would not be considered "highly offensive to a reasonable person." (Motion to Dismiss, Doc. No. 23 at PageID 388.) Such finding of offensiveness is necessary to establish a claim of invasion of privacy under false light. As this element cannot be established, Defendants reason that Alahverdian's claim cannot survive the Motion to Dismiss. *Id*.

In recognizing the tort of invasion of privacy, the Ohio Supreme Court adopted Restatement of Torts 2d § 652(A) as follows:

> (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
>
> (2) The right of privacy is invaded by
>
> (a) unreasonable intrusion upon the seclusion of another [as stated in §652B; or]
>
> (b) appropriation of the other's name or likeness [as stated in §652C; or]
>
> (c) unreasonable publicity given to the other's private life [as stated in §652D; or]
>
> (d) publicity that unreasonably places the other in a false light before the public [as stated in §652E.]

*Jackson v. Playboy Enterprises, Inc.*, 574 F. Supp. 10, 12 (S.D. Ohio 1983), *quoting Sustin v. Fee*, 69 Ohio St. 2d 143, 145 (1982); *see also Housh v. Peth*, 165 Ohio St. 35 (1956); *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224 (1976), rev'd on other grounds, 433 U.S. 562 (1977). In *Welling v. Weinfeld*, 113 Ohio St. 3d 464, 2007-Ohio-2451 (2007), the court recognized the tort of false light invasion of privacy, adopting § 652E of the Restatement 2d. However, the "requirements imposed by the Restatement make a false-light claim difficult to prove." *Fronk v. Univ. of Toledo*, 2010-Ohio-4307, ¶45, *quoting Welling*, 2007-Ohio-2451, ¶51.

§ 652E of the Restatement Second provides:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> > (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> >
> > (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

It is noted in comment b to section 652E that defamation is not necessary for a plaintiff so succeed on a false light theory. "It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." This section stresses however, that the statement must be false.

Further, the information must be highly offensive to a reasonable person, to wit, it applies when the defendant knows that:

> the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity. . . [i]t is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.

Restatement of Torts 2d § 652E, note c. Further, the information must be publicized, that is, communicated to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. *Curry v. Village of Blanchester*, 2010-Ohio-3368, ¶¶ 54-55 (Ohio Ct. App. 2010); *Welling*, 2007-Ohio-2451.

Taking the allegations set forth in the Complaint as true, Alahverdian still fails to raise a claim of entitlement to relief for invasion of privacy under false light. The comments made by Grebinski, as conveyed in the first count, cannot possibly be held to be highly offensive to a reasonable person. Her comments were made on a public forum (Facebook page of a local news station) in the comment section of a news article about a press conference held by Alahverdian to announce a civil suit filed against the actors in his state criminal case. These comments, however, were not referencing, implying, or conveying any sort of information pertaining to Mr.

Alahverdian. Rather, her comments were made in response to another poster's comments about the victim, herself. (See Amended Complaint, Doc. No. 21, PageID 370, ¶26.)

The Court now turns to the portion of the claim regarding statements alleged to have been made by Lanning.  Alahverdian argues that the blog post made by Lanning was false light invasion of privacy, and further that "Defendant published the article without privilege and without Plaintiff's consent."  *Id.* at PageID 376.  In the Amended Complaint, Alahverdian admits that he was operating his own website regarding the criminal case which was available for public consumption.

> [P19] On or around April 7, 2013, Plaintiff published a statement entitled "Statement on this so-called sex controversy in Ohio" on his website, www.nicholasalahverdian.com in response to the five years of unjust legal terror based on unsubstantiated and untrue allegations brought against him by Defendant Grebinski.
>
> [P20] Plaintiff linked to a blog posting authored by Defendant Lanning from "one year ago" located at Lanning's personal aforesaid blog that referred to Defendant Mary Grebinski's promiscuity, infidelity, crude sexual behavior, sexual dysfunction, antisocial behavior, and disregard for the emotions of others. See Exhibit. A.
>
> [P21] On or around April 8, 2013 Defendant Lanning noticed that Mr. Alahverdian had linked to this posting referencing Defendant Grebinski's antisocial behavior, sexual dysfunction, and inappropriate promiscuity and deliberately edited and replaced the text with [see count one for the full text of the post in contention]

(Amended Complaint, Doc. No. 21, PageID 368.)

The Court pauses for a moment to make note that Defendants allege Alahverdian operated and/or appeared on other internet sites as well, for example, a YouTube video entitled, Mary Grebinski's Lies: The Nicholas Alahverdian AVFM Interview (published on Sept. 9, 2013), and a blog about his case at http://alahverdianversusgrebinski.wordpress.com/ (it appears to archive back at least until April 2013). The Court has not reviewed the information contained

on these sites, and while not commenting on the contents or the authenticity of the postings, the Court takes judicial notice as to their existence. The Court also considers Alahverdian's statement in paragraph 61 of his Amended Complaint, that Defendant published the article without privilege and without Plaintiff's consent. (Amended Complaint, Doc. No. 21, PageID 378.) While not specifying which article he is taking exception to in this paragraph, it does cause the Court to ponder what "consent" was obtained in all the websites mentioned here within, including those owned and operated by the Plaintiff.

As described in the first count, many of Lanning's statements were supported by truth as determined by the Ohio state courts. The truth of a statement serves as a defense against claims of false light. As set forth by Ohio law, in order to make a showing of false light, "first, the statement made must be untrue." *Welling*, 2007-Ohio-2451, **P51 (2007).

Moreover, the comments do not reach a level of being highly offensive to support a claim of false light. *Id.* at **P54 ("another element of a successful false-light claim is that the misrepresentation made must be serious enough to be highly offensive to a reasonable person.") As noted by Plaintiff and repeated verbatim in count one, "people frequently use adjectives such as "stupid" and "crazy" to express their feelings or opinions about an individual. No reasonable listener would interpret such expressions as factual assertions about the individual's mental capacity." (Response to Motion to Dismiss, Doc. No. 27, PageID 414-415, *citing Stepian v. Franklin*, 39 Ohio App.3d 47 (1988). This Court agrees. Despite the failure to preface such comments with a disclaimer in the vein of "in my opinion," these types of statements are common vernacular in today's society, and as such, it seems unlikely that a reasonable listener would interpret this to be an accurate statement as to another's mental health nor would they find the comment to be highly offensive. Rather a reasonable listener would find the expression to be

an opinion which was at most discourteous and perhaps in bad taste. Based on the foregoing reasons, Alahverdian fails to make an actionable claim under false light invasion of privacy, and this count should be dismissed.

Count III- Intentional Infliction of Emotional Distress

In his third count Alahverdian claims intentional infliction of emotional distress as a result of the actions of Defendants in continually and intentionally engaging in outrageous conduct. (Amended Complaint, Doc. No. 21, PageID 377.) As a result of these actions he has suffered a decrease in his well-being, including but not limited to: depression and anxiety; intense fear of personal harm and feelings of being overwhelmed and vulnerable; impaired concentration, withdrawal, irritability, preoccupied and tense moods; an exaggerated startled response; and loss of confidence and feelings of degradation and shame. *Id*. at PageID 378.

Defendants argue that the statements alleged to have been made cannot support an intentional infliction of emotional distress claim as a necessary element of the tort is missing, namely that the conduct was so extreme or outrageous that it went beyond all possible bounds of decency. (Motion to Dismiss, Doc. No. 23, PageID 386-393; *citing Morrow v. Reminger & Reminger*, 2009-Ohio-2665, ¶45 (Ohio App. 10th Dist. 2009)).

In recognizing the tort of intentional infliction of emotional distress, the Ohio Supreme Court adopted Restatement of the Law 2d, Torts 2d, § 46 (1965), and comment d to that section. As expounded upon by the Ohio Supreme Court:

> [W]e hold that in order to state a claim alleging the intentional infliction of emotional distress, the emotional distress alleged must be serious. As Dean Prosser reasoned in his learned treatise, "[i]t would be absurd for the law to seek to secure universal peace of mind, and many interferences with it must of necessity be left to other agencies of social control. 'Again a large part of the frictions

and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be.' But this is a poor reason for denying recovery for any genuine, serious mental injury." Prosser, Law of Torts (4 ed. 1971) 51, Section 12 (quoting Magruder, Mental and Emotional Disturbance in the Law of Torts [1936], 49 Harv. L. Rev. 1033, 1035.)

\*\*\*

The standard we adopt in our recognition of the tort of intentional infliction of serious emotional distress is succinctly spelled out in the Restatement as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement of the Law 2d, Torts (1965) 71, Section 46(1).

\*\*\*

With respect to the requirement that the conduct alleged be "extreme and outrageous," we find comment d to Section 46 of the Restatement, *supra*, at 73, to be instructive in describing this standard.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing

down, and in the meantime plaintiffs must necessarily be expected
and required to be hardened to a certain amount of rough language,
and to occasional acts that are definitely inconsiderate and unkind.
There is no occasion for the law to intervene in every case where
someone's feelings are hurt. There must still be freedom to express
an unflattering opinion, and some safety valve must be left through
which irascible tempers may blow off relatively harmless steam.
See Magruder, Mental and Emotional Disturbance in the Law of
Torts, 49 Harvard Law Review 1033, 1053 (1936).

*Yeager v. Local Union 20,* 6 Ohio St. 3d 369, 374-75 (1983), *abrogated by, Welling v. Weinfeld,* 113 Ohio St. 3d 464 (2007) [although *Yeager* has been abrogated by *Welling*, the proposition for which the Court cites *Yeager* herein was not disturbed by *Welling*]; *see also Lombardo v. Mahoney*, 2009-Ohio-5826, at ¶8, 2009 Ohio App. LEXIS 4901 (Ohio App. 8th Dist. 2009).

In order to recover on an action for the intentional infliction of serious emotional distress four elements must be proved: 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered utterly intolerable in a civilized community; 3) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and 4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person can be expected to endure it. *Miller v. Currie*, 50 F.3d 373 (6th Cir. 1995); *Pyle v. Pyle,* 11 Ohio App. 3d 31, 34 (Ohio App. 8th Dist. 1983) (citation omitted); *Bellios v. Victor Balata Belting Co*., 724 F. Supp. 514, 520 (S.D. Ohio 1989).

In turning to the prongs of the standard, major outrage is essential to the tort. The fact that the actor knows the other will regard the conduct as insulting and may have their feelings hurt is not enough. *Curry v. Village of Blanchester*, 2010-Ohio-3368 (Ohio App. 12th Dist. 2010). As previously stated, "[p]laintiffs must necessarily be expected and required to be

hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt." *Id.*, *quoting Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-375 (1983); *see also Lombardo*, 2009-Ohio-5826 at ¶9 .

Rather, as indicated in the second element, "the alleged conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Colston v. Cleveland Pub. Library*, 2013 U.S. App. LEXIS 7690, *20 (6th Cir. 2013), *quoting Long v. Ford Motor Co.*, 193 F. Appx 497, 502-503 (6th Cir. 2006); *see also Curry*, *supra*.

> Ohio courts have found far more egregious statements than those made by Abrams to fall below the "outrageous" threshold. See, e.g., *Curry v. Village of Blanchester*, 2010 Ohio 3368, ¶¶ 54-55 (Ohio Ct. App. 2010) (where the supervisor told the plaintiff, in front of her colleagues, that she was "all tits and no brain"); *Lombardo v. Mahoney*, 2009 Ohio 5826, ¶ ¶10-11 (Ohio Ct. App. 2009) (where the supervisor called the plaintiff a "cock sucking mother fucker").

*Colston,* 2013 U.S. App. LEXIS 7690, at *19-20.

As for the next elements, the emotional distress required must be both severe and debilitating. *Paugh v. Hanks*, 6 Ohio St. 3d 72 (1983). While expert medical testimony is not an absolute necessity in every case, many Ohio courts have dismissed claims for emotional distress by plaintiffs who never sought medical assistance. *Dickerson v. Int'l United Auto Workers Union*, 98 Ohio App. 3d 171 (Ohio App. 8th Dist. 1994). A trial court may determine whether a complainant has stated a cause of action for tortious emotional distress by ruling whether the emotional injury alleged is serious as a matter of law. *Id.* (citation omitted). Thus a number of courts have rejected specific complaints as not causing severe or debilitating emotional distress.

*Id., citing, Gagne, supra.* (sleeplessness, withdrawal, and "not the same person she was" is not of sufficient severity); *Jones v. Washington,* 67 Ohio App. 3d 176 (Ohio App. 6th Dist. 1990) (recurring nightmares did not constitute showing of sufficient psychic injury); *McCarthy v. Cleveland Hts.,* 65 Ohio App. 3d 216 (Ohio App. 8th Dist. 1989) (depression requiring psychological counseling following son's suicide was not sufficiently severe); *Lynn v. Allied Corp.,* 41 Ohio App. 3d 392 (Ohio App. 8th Dist. 1987) (distraught and hysterical feelings, crying, and elevated blood pressure not sufficiently serious).

The Sixth Circuit has recognized [in the propriety of applying this standard on summary judgment]:

> To the extent that [plaintiff] suggests a district court judge cannot rule that, as a matter of law, certain conduct does not rise (or sink) to the extreme and outrageous level required to state a claim for intentional infliction of emotional distress, she attempts to prove too much. It is well accepted that intentional infliction of emotional distress claims may entirely appropriately be dealt with on summary judgment or in a motion to dismiss. *See, e.g., Rogers v. Targot Telemarketing Servs.,* 70 Ohio App. 3d 689, 591 N.E. 2d 1332, 1333, 1336 (1990)(treating plaintiff's allegations that she was falsely promised continued employment with the intention of causing her to detrimentally rely on the assurances as insufficient to qualify as extreme or outrageous); *Baab v. AMR Serv. Corp.*, 811 F. Supp. 1246, 1270 (N.D. Ohio 1993)(stating that co-workers' display of photographs of scantily clad women and plaintiff's receipt of pornographic "sex toys" was not intolerable in a civilized society and therefore not extreme or outrageous).

*Miller v. Curie*, 50 F.3d 373, 377-78 (6th Cir. 1995).

The comments alleged to have been made in this Complaint do not rise to the standard of outrageous or extreme. "It is the rare case that reaches the very high bar of showing "extreme and outrageous" conduct. *Lombardo v. Mahoney*, 2009-Ohio-5826, ¶ 7 (Ohio App. 8th Dist. 2009), *citing Brown v. Denny*, 72 Ohio App.3d 417, 423 (1991); *see Curry v. Village of Blanchester*, 2010-Ohio-3368, at ¶55 (Ohio App. 12th Dist. 2010) (comments stating that a

woman was "tits and no brain" and carrying on an affair fell short of being "outrageous," "extreme," or "utterly intolerable" but rather were merely undesirable comments"); *Lombardo*, 2009-Ohio-5826, ¶ ¶10-11 (holding the statement, "You cock sucking, mother f*cker, you f*cking asshole you, I'm going to f*ck you up. You, Joe, mother f*cker" was not sufficient to meet the outrageous and extreme element of intentional infliction of emotional distress); *Garcia v. Whirlpool*, 2010 U.S. Dist. LEXIS 118409, *7, 24 (N.D. Ohio 2010), affirmed by 2012 U.S. App. LEXIS 7327 (6th Cir. 2012)(a supervisor calling an disabled employee a "gimp" and laughing, as well as stating he did not want to deal with anybody's restrictions was not sufficient to make a showing of extreme or outrageous behavior for purposes of intentional infliction of emotional distress under Ohio law); *Wolfe v. Thermo Fisher Scientific, Inc.*, 2009 U.S. Dist. LEXIS 41702, *8-9 (S.D. Ohio 2009)(remarks that were sexual in nature did not rise to the level of intentional infliction of emotional distress under Ohio law because they were not so outrageous or extreme to be found atrocious or utterly intolerable in a civilized community); *citing Hill v. Village of West Lafayette*, 1996 Ohio App. LEXIS 3721 (Ohio App. 5th Dist. 1996)(false disciplinary charges and defamatory conduct insufficiently extreme or outrageous); *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269-70 (N.D. Ohio 1993)("pin-ups of scantily clad celebrities in common areas, the hidden display of pictures of naked women (not engaging in sexual acts) to which plaintiff was exposed by coworkers, and the receipt of pornographic, explicit photographs and sex toys in her locker" not sufficient.)

Even accepting all the facts contained in the Complaint as true, the Court is at a loss as to any possible way the alleged comments made by Ms. Grebinski could be held to be so outrageous and extreme as to be actionable and support a claim of intentional infliction of emotional distress.

Nor does the Court consider Lanning's comments describing Alahverdian as "crazy," as someone that "dodge[d] having to register as an offender for years," as having been found by the FBI to have "made up a false website," or as someone that had sexually assaulted another to be sufficiently outrageous or extreme to support this claim. (See Response to Motion to Dismiss, Doc. No. 27, PageID 413.)   Rather they fall into the category of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  For example, the comment relating to Alahverdian being crazy is an example of the freedom to express an unflattering opinion or issue a mere insult. While the comments may not exemplify civility or may possibly even be considered by some to be deplorable, they simply are not outrageous or extreme and go beyond all bounds of decency, nor are they regarded as utterly intolerable in a civilized society. Based on this analysis, Alahverdian does not have a plausible claim or entitlement to relief for intentional infliction of emotional distress.

It is recommended that the Motion to Dismiss on Count III be granted.

**CONCLUSION**

For the reasons set forth in this Report, it is respectfully recommended that the Motion to Dismiss be granted and the Amended Complaint be dismissed with prejudice.

May 19, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).